

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ELVIA BAEZ, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-414-A |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISIONER OF SOCIAL | § | |
| SECURITY,  DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate are as follows:

FINDINGS AND CONCLUSIONS

I.      STATEMENT OF THE CASE

Plaintiff Elvia Baez ("Baez") filed this action pursuant to Sections 405(g) and 1383(c)(3)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner

of Social Security denying her claim for supplemental security income ("SSI") under Title XVI

of the Social Security Act ("SSA").  Baez applied for SSI on July 12, 2010, alleging her

disability began on December 1, 2008.  (Transcript ("Tr.") 13, 146-65.)  She later amended her

alleged disability onset date to July 12, 2010, the date of her SSI application.[1]  (Tr. 13, 34.)

After her application for benefits was denied both initially and on reconsideration, Baez

requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 13, 83-96.)  The ALJ

---

[1] The Court notes that the ALJ, in her decision, states the claimant, at the hearing, "amended the alleged onset date to July 10, 2010, the date of her Title XVI application."  (Tr. 13.)  This appears to be a typographical error, and the correct date is July 12, 2010.  (Tr. 34.)

held a hearing on February 27, 2013, and she issued a decision unfavorable to Baez on March 20, 2013. (Tr. 10-24, 31-54.) On April 2, 2014, the Appeals Council denied Baez's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-6.) Baez subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq*. In addition, numerous regulatory provisions govern SSI benefits. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial or gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920 (2012). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to the claimant's past relevant work. *Id.* § 416.920(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education,

2

and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla of evidence, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[2]

### III.   ISSUES

In her brief, Baez presents, in essence, the following issues:

A. Whether the ALJ erred in failing to discuss or find at Step Two that her migraine headaches were a severe impairment; and

---

[2] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

B.  Whether the ALJ failed to properly analyze the opinions of Ms. Baez's treating physicians.

(Plaintiff's Brief ("Pl.'s Br.") at 2, 6-25.)

## IV.   ADMINISTRATIVE RECORD

In her March 20, 2013 decision, the ALJ found at Step One Baez that had not engaged in substantial gainful activity since July 12, 2010, the amended alleged onset and application date. (Tr. 15.)  At the second step of her analysis, the ALJ concluded that Baez had the following severe impairments: "degenerative joint disease, osteoarthritis, obesity, and vertigo." (Tr. 15.) At Step Three, the ALJ found that Baez did not suffer from an impairment or combination of impairments that met or equaled the severity of any impairment in the Listing. (Tr. 17.)  At the fourth step, as to Baez's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can only use her upper extremities frequently for fine and gross manipulation, feeling, and reaching in all directions including overhead; must avoid concentrated exposure to hazards like unprotected heights and moving machinery; can only balance frequently; and is limited to unskilled, rote, routine work due to her pain, medication side effects, and other symptoms and limitations.

(Tr. 17 (emphasis omitted).)

Based on her RFC assessment, the ALJ opined that Baez was not able to perform any of her past relevant work. (Tr. 23.)  However, at the fifth step the ALJ found that jobs existed in significant numbers in the national economy that Baez could perform. (Tr. 23–24.)  Based on this determination, the ALJ concluded that Baez was not disabled. (Tr. 24.)

## V.   DISCUSSION

### A.   Step Two and Migraine Headaches

In her brief, Baez argues that the ALJ erred as a matter of law by failing to discuss her impairment of migraine headaches and in failing to find such impairment severe at Step Two. (Pl.'s Br. at 6-10.) Specifically, Baez claims:

> [T]he ALJ first erred by failing to even *consider* whether Ms. Baez's migraines impose functional limitations. This error was compounded by the ALJ's failure to include any workplace limitations related to Ms. Baez's migraines in her RFC finding and concomitant hypothetical to the vocational expert. Plaintiff will demonstrate, below, that the medical evidence establishes that Ms. Baez's migraines result in significant functional limitations and are therefore severe.
>
> . . . .
>
> On June 6, 2012, Ms. Baez presented to Swaraj Singh, M.D., a neurologist, with complaints of a two to three month history of headaches that could last anywhere from a few hours to 2 days. Ms. Baez also reported daily fatigue and lack of energy. Dr. Singh diagnosed her with common migraine and prescribed Topomax. Ms. Baez initially reported some improvement with Topomax, but during an August 13, 2012 appointment, she described daily headaches with visual auras. Dr. Singh concluded that she appeared to have chronic migraines, and he increased her dose of Topomax to 75 mg and added Meclizine for dizziness and Fioricet for headache control as needed. On January 16, 2013, Ms. Baez returned to Dr. Singh with reports of severe migraines 5 times a month and nearly-daily dull headaches. Dr. Singh again increased her dose of Topomax, to 200mg twice a day, and advised that she is a good candidate for Botox for prophylaxis. He also provided samples of Zomig, Sumavel, and Cambia for Ms. Baez to test for effectiveness. During the hearing, Ms. Baez testified that she suffers from daily headaches, with only partial relief from her medication regimen.
>
> The foregoing medical evidence clearly demonstrates that Ms. Baez's migraine headaches meet the Agency's definition of a "severe" impairment; however, even before one reaches the issue of severe impairment as applied to plaintiff's migraine headaches, the fundamental error of the ALJ is that *she did not discuss them at all*, despite evidence which should have compelled her to do so.
>
> Plaintiff recognizes a school of thought with respect to the step 2 inquiry that states that once an ALJ has found *any* of a claimant's impairments to be

5

"severe", this satisfies the Agency's obligation with respect to step 2. However, even assuming this conceptual framework, the ALJ still erred since Ms. Baez's migraine headaches plainly imposed work-related limitations never considered in the ALJ's decision.

(Pl.'s Br. at 7-8 (internal citations & footnotes omitted).)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *cf. id.* § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101.

Contrary to Baez's argument that the ALJ failed to discuss her migraine headaches, the ALJ did note that Baez testified that she suffered from daily headaches.[3]   (Tr. 18.) While the ALJ did not specifically analyze Baez's migraine headaches, Baez has not presented any non-conclusory or non-speculative evidence showing how her migraine headaches impacted her ability to work in a manner not already accounted for in the ALJ's RFC determination. *See, e.g., McDaniel v. Colvin*, No. 4:13-CV-989-O, 2015 WL 1169919, at *4-5 (N.D. Tex. Mar. 13, 2015);

---

[3] While not dispositive, the Court notes that the ALJ did specifically note that Baez had been diagnosed with occipital neuralgia, which is a type of headache. (Tr. 16; *see Perkins v. Astrue*, No. CV07-2106, 2008 WL 4280032, at *2 n.1 (W.D. La. Aug. 22, 2008).)

*Lewis v. U.S. Comm'r Soc. Sec. Admin.*, No. 07-CV-1617, 2008 WL 5459741, at *2 (W.D. La. Dec. 1, 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-causing limitation that was not considered by the ALJ). In fact, the ALJ specifically limited Baez, *inter alia*, to "unskilled, rote, routine work due to her pain, medication side effects, and other symptoms and limitations." (Tr. 17.) The mere presence or diagnosis of some impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Martinez v. Astrue*, No. 4:10-CV-883-Y, 2011 WL 3930219, at *8 (N.D. Tex. Aug. 18, 2011) ("[T]he mere diagnosis of a mental impairment such as depression 'says nothing about the severity of the condition.'") (quoting *Parra v. Astrue*, No. 4:07-CV-443-Y, 2009 WL 49999, at *5 (N.D. Tex. Dec. 3, 2008)).

Moreover, as noted by the Commissioner, the fact that Baez's migraine headaches were reasonably controlled with medication (*see* Tr. 1102-03, 1106-07, 1114-16, 1208-09) indicates that they did not cause work-related functional limitations. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). In addition, Baez points to no evidence that she ever claimed her migraine headaches constituted a severe impairment upon which she sought SSI benefits. Instead, the evidence in the record shows that Baez never claimed migraine headaches was an impairment that attributed to her inability to work. (*See, e.g.*, Tr. 35, 142, 155, 182, 203, 221.) *See generally*, *Harper v. Barnhart,* 176 F. App'x 562, 566 (5th Cir. 2006) (holding that claimant's allegations of cardiac neurosis, which was not listed in her original application for benefits and was only referenced in the medical expert's description of its symptoms, were the kind of isolated comments that were insufficient to raise suspicion of a non-exertional impairment); *Pope v. Colvin*, No. 4:13-CV-473-Y, 2014 WL 1724766, at *4

(N.D. Tex. May 1, 2014) (finding no error occurred when the ALJ failed to consider isolated comments in the record concerning claimant's vision when claimant did not mention vision impairment in his application and did not raise the issue until after the ALJ rendered a decision). Because the ALJ did not err in her analysis of Baez's migraine headaches, remand is not required.

### B.   Treating Physicians

Baez also argues that the ALJ erred in failing to properly analyze the opinions of Joseph Curletta, M.D. ("Dr. Curletta") and Mark Friedman, M.D. ("Dr. Friedman"), two of Baez's treating physicians. Specifically, Baez claims that the ALJ erred in rejecting their opinions without considering the factors set forth in 20 C.F.R. § 416.927. (Pl.'s Br. at 11-12.) Baez further states that the "ALJ not only failed to provide 'good reasons' by reference to the factors set forth in 20 CFR 416.927(c), she rejected uncontradicted medical opinion evidence and therefore relied improperly on lay opinion to support her conclusions. (Pl.'s Br. at 12.) Baez claims that the ALJ's rationale for assigning Dr. Friedman and Dr. Curletta's opinions "little weight" are not supported by substantial evidence. (Pl.'s Br. at 14-18.) Baez further argues that the treating physicians' opinions are not contradicted by the other medical opinions in the record as neither the SSA consultative examiner nor the state agency medical consultants ("SAMCs") provided any opinion as to Baez's work-related limitations. (Pl.'s Br. at 18-20.) Baez claims that the opinions of Dr. Curletta and Dr. Friedman are supported by and not contradicted by the underlying medical evidence. (Pl.'s Br. at 21-25.)

RFC is what an individual can still do despite her limitations.[4]  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.; see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do, but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[5] factors to be considered, and it is based upon all of the relevant evidence in the case record.  *Id.* at *3–5.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe.  *See* 20 C.F.R § 416.929; SSR 96-7p, 1996 WL 374186 at *1 (July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5.  The ALJ is permitted to draw reasonable inferences from the evidence in making her decision, but the social security rulings also caution that presumptions, speculation, and

---

[4] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[5] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting standing, walking, lifting, carrying, pushing, and pulling."  SSR 96-8p, 1996 WL 374194, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that she does not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")

Controlling weight is assigned to the opinions of a treating physician if such opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, she must consider all medical opinions. 20 C.F.R. §§ 461.927(b), (d)(1). The ALJ may decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the

criteria set forth in 20 C.F.R. § [416.927(c)]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); *see* SSR 96-6p, 1996 WL 364180, at *3 (July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4.

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 416.927(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

Dr. Friedman, Baez's primary care physician, wrote a letter dated April 11, 2012. (Tr. 921.) In such letter, he stated, *inter alia*,:

11

Ms. Baez continues to be on non work status due to her health condition. Her diagnoses are[] lumbar spondylosis, bilateral shoulder pain, knee pain, cervical radiculopathy, cervical spondylosis, occipital neuralgia, hypertension, arthritis and pulmonary hypertension.

She will be re-evaluated in May 2012; at that time we will review her most recent visits with the specialists.

(Tr. 921.)

Dr. Curletta, a pain management specialist, opined in a Physical Medical Source Statement dated January 30, 2013, that Baez suffered from cervical spondylosis with myelopathy and stated that no further improvement was anticipated. (Tr. 1163-66.) Dr. Curletta indicated that he had been treating Baez every one to two months since April 12, 2012. (Tr. 1163.) Dr. Curletta further opined that Baez could sit for about four hours and stand/walk for about two hours total during an eight-hour workday. (Tr. 1164.) He stated that Baez would need a job that permitted shifting positions at will from sitting, standing, or walking and would need to take unscheduled breaks of five to ten minutes every thirty to sixty minutes. (Tr. 1164.) Dr. Curletta also indicated that Baez had significant limitations in reaching, handling, or fingering, would likely be off task 25% or more of the time, and was likely to be absent from work more than four days a month. (Tr. 1165-66.)

As stated above, the ALJ determined that Baez had the RFC to, in essence, perform light work[6] except that she: (1) could only use her upper extremities frequently for fine and gross

---

[6] Pursuant to the regulations, light work is defined as follows:

Light work involves lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

manipulation, feeling and reaching in all direction including overhead; (2) must avoid concentrated exposure to hazards like unprotected heights and moving machinery; (3) could only balance frequently; and (4) was limited to unskilled, rote, routine work due to her pain, medication side effects, and other symptoms and limitations. (Tr. 17.) In making such a determination, the ALJ analyzed, *inter alia*, the following evidence in the record: (1) examination records from August 2010 in which Michael Wilmink, Baez's treating orthopedist, opined that Baez was able to function normally with both upper extremities and had no significant impairment for employability or activities of daily living (Tr. 21, 303-06; *see also* Tr. 283-303, 758-776; (2) a wide variety of treatment records regarding Baez's neck and back that showed, in essence, while she at times had some decreased range of motion in her spine, she had: (a) several negative straight leg raises tests, (b) normal spine exams, (c) no tenderness, no pain, normal range of motion, bulk, and tone in all her extremities, (d) normal sensation and strength in her lower extremities, and (e) good symptom control with treatment (Tr. 19 (referencing Exhibits ("Exs.") 7F, 9F, 13F, 14F, 17F, 19F, 25F, 26F, 31F, 36F)); (3) a wide range of treatment records regarding Baez's upper extremities that showed she had arthroscopic surgery on both shoulders, which was successful in reducing her symptoms, and, while she had some issues with decreased range of motion and discomfort, she generally had normal muscle tone, bulk and strength in her upper extremities (Tr. 19-20 (referencing Exs. 1F, 5F, 8F, 9F, 13F, 14F, 17F, 19F, 24F, 25F, 26F, 27F, 29F, 31F)); (4) a wide range of treatment records regarding Baez's lower extremities that showed: (a) while she had surgery on her right ankle to address her osteoarthritis, she fell and reinjured it in mid-2010, and (b) while she had decreased range of motion in her right knee and ankle and mild tenderness, she retained full range of motion in her

---

20 C.F.R. § 416.967(b).

left knee and bilateral hips and good strength, tone, and sensation in her lower extremities (Tr.

20) (referencing Exs. 4F, 17F, 19F, 24F, 25F, 26F, 29F, 31F)); (5) a wide range of treatment

records regarding Baez's vertigo that indicated, in essence, it had been reasonably controlled by

medication, she was able to get on and off the examination table with no problems, and she

displayed normal coordination and gait (Tr. 21 (referencing Exs. 1F, 5F, 7F, 8F, 9F, 12F, 13F,

14F, 15F, 17F, 19F, 24F, 25F, 26F, 29F, 30F, 31F)).

    In her decision, the ALJ also analyzed the opinions of Dr. Curletta and Dr. Friedman,

stating:

>     Little weight has also been assigned to the opinion of Dr. Mark Friedman,
> the claimant's primary care physician. In April 2012, he opined that [t]he
> claimant continued to be on non work status due to her diagnoses of lumbar
> spondylosis, bilateral shoulder pain, knee pain, cervical radiculopathy, cervical
> spondylosis, occipital neuralgia, hypertension, arthritis, and pulmonary
> hypertension (Exhibit 20F). Statements that a claimant is "disabled, "unable to
> work", can or cannot perform a past job, or the like are not medical opinions but
> are administrative findings dispositive of a case, requiring familiarity with the
> Regulations and legal standards set forth therein. Such issues are reserved to the
> Commissioner, who cannot abdicate her statutory responsibility to determine the
> ultimate issue of disability. Opinions on issues reserved to the Commissioner,
> such as that of Dr. Friedman, can never be entitled to controlling weight, but must
> be carefully considered to determine the extent to which they are supported by the
> record as a whole or contradicted by persuasive evidence (20 CFR 404.1527(d)(2)
> and 416.927(d)(2); SSR 96-5p). Dr. Friedman's opinion is not supported by
> specific objective findings. In addition, his opinion is inconsistent with the
> claimant's most recent physical examinations, which show minimal findings
> (Exhibit 26F).
>
>     Little weight has also been given to the medical source statements
> provided by Dr. Joseph Curletta. In January 2013, he opined that the claimant
> had a mental or physical incapacity which prevented her from performing any
> substantially gainful employment for which she was qualified (Exhibit 33F;
> Exhibit 36F). Specifically, he opined that the claimant could sit for about four
> hours in an eight-hour workday, could stand/walk for about two hours in an eight-
> hour workday, would need to shift positions at will, would sometimes need to
> take unscheduled breaks, would have significant limitations with reaching,
> handling, or fingering, would likely be off task for 25% or more of the workday,
> and would be absent more than four days per month (Exhibit 36F; 37F). Not only
> is Dr. Curletta's opinion vague, as he was unable to answer all of the questions,

but it is not supported by objective clinical findings or observations. The record shows that the claimant typically walks with a normal gait (Exhibit 1F; Exhibit 5F; Exhibit 7F; Exhibit 8F; Exhibit 9F; Exhibit 12F; Exhibit 13F; Exhibit 14F; Exhibit 15F; Exhibit 17F; Exhibit 19F; Exhibit 24F; Exhibit 25F; Exhibit 26F; Exhibit 30F). Moreover, there is no evidence that the claimant would be off task or absent to the extent that Dr. Curletta opined. Mental status examinations show that the claimant can follow three-step instructions. In addition, she testified that she used to babysit, which undoubtedly requires attention and concentration. Finally, Dr. Curletta does not address the fact that the claimant reports that her pain is managed with medication. (Exhibit 25F, Exhibit 26F, Exhibit 36F).

(Tr. 22.) The ALJ further stated:

In sum, the claimant is limited to a range of light work due to her degenerative disc disease and arthritis. However, the claimant can only use her upper extremities frequently for fine and gross manipulation, feeling, and reaching in all directions including overhead due to her bilateral shoulder arthritis. This limitation is also consistent with the claimant's testimony. In addition, the claimant must avoid concentrated exposure to hazards like unprotected heights and moving machinery and can only balance frequently due to her vertigo. Finally, the claimant is limited to unskilled, rote, routine work due to her pain, medication pain effects, and other symptoms and limitations.

(Tr. 22.)

As to Dr. Friedman's statement, the Court notes that his statement does not set forth any specific limitations based on Baez's impairments. Instead, the statement merely indicates what she has been diagnosed with and that she "continues to be on non work status," which appears to be a conclusion that Baez is disabled. (Tr. 921.) However, as noted by the ALJ, conclusory findings by a treating physician that a patient is "disabled" or "unable to work" are not to be given any special significance because legal conclusions regarding disability are reserved to the ALJ. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *see* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183 (S.S.A. July 2, 2996). Consequently, the ALJ did not err in not adopting Dr. Friedman's conclusory opinion that Baez was, in essence, unable to work and was not required to apply the factors set forth in 20 C.F.R.§ 416.927(c) prior to rejecting such opinion. *See Frank*, 326 F.3d at 620 ("The ALJ must consider the six factors in subsection [20

15

C.F.R. § 416.927(c)] only with respect to *medical opinions* of treating physicians."); *Sanchez v. Astrue*, 265 F. App'x 359, 361 (5th Cir. 2008) ("However a physician's conclusory opinion of disability intrudes upon an area reserved to the Commissioner, and the ALJ may reject such an opinion without referring to the factors used to evaluate a typical medical opinion.")

As to Dr. Curletta's statement, the Court concludes that, based on the foregoing, the ALJ was in her right to assign "little weight" to Dr. Curletta's Physical Medical Source Statement. Specifically, the incomplete nature of Dr. Curletta's statement, the opinions of Dr. Wilmink, the large amount of medical treatment notes analyzed by the ALJ, and some of Baez's own statements provide substantial evidence to the ALJ's decision regarding Dr. Curletta's Physical Medical Source Statement. However, as argued by Baez, the problem is that by rejecting Dr. Curletta's Physical Medical Source Statement, **there are no other medical opinions** describing Baez's **work-related** limitations for the ALJ to rely on in formulating her RFC determination that limits Baez to light work with additional limitations.

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ found that the claimant could perform sedentary work even though there was no medical evidence or testimony to support that conclusion. 67 F.3d at 557. The Fifth Circuit Court of Appeals, noting that the record contained a vast amount of evidence establishing that the claimant had a back problem[7] but not clearly establishing the effect that condition had on his ability to work, remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The Fifth Circuit rejected the Commissioner's argument that the medical evidence that discussed the extent of the claimant's injuries substantially supported the ALJ's conclusion. *Id.* at 558. The Court did so because it

---

[7] "The evidence that was available for review by the ALJ shows a four year history of surgery, medical examinations, and complaints of pain" as well as the claimant's testimony. *Ripley*, 67 F.3d at 557.

was unable to determine the effects of the claimant's condition, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

In the present case, as to her RFC determination, the ALJ gave "little weight" to basically every physician opinion in the record. While the ALJ did give "some weight" to the opinion of Dr.Wilmink, Baez's treating orthopedist, his opinion that Baez was able to function normally with both upper extremities and had no significant impairment for employability or activities of daily living does not provide support for the limitations on Baez's ability to work that the ALJ found in her RFC determination.[8]  (Tr. 21, 303.)  "While the ALJ may choose to reject [the medical opinions in the record], he cannot then independently decide the effects of Plaintiff's . . . impairments on [her] ability to work, as that is expressly prohibited by *Ripley*." *Shugart v. Astrue*, No. 3:12-CV-1705-BK, 2013 WL 991252, at *5 (N.D. Tex. Mar. 13, 2013).[9]  Moreover, the only other remaining evidence appears to be a vast amount of general treatment notes that set forth routine examination observations.  Consequently, "at [this] point, it became incumbent upon the ALJ to obtain an expert medical opinion about the types of work activities that Plaintiff could still perform given [his] impairments." *Id.*

In this case, because the ALJ rejected all medical opinions in the record that might explain the effects of Baez's physical impairments on his ability to perform work, there is no

---

[8] In fact, the ALJ stated, "The opinion was accurate for the time that it was given. However, more recent evidence shows that the claimant has some limitations on reaching (Exhibit 13F; Exhibit 17F; Exhibit 31F)."

[9] The absence of a medical source statement describing the types of work that a claimant is capable of performing does not, in itself, make the record incomplete. *Ripley*, 67 F.3d at 557. "However, evidence describing the claimant's medical conditions is insufficient to support an RFC determination." *See Moreno v. Astrue*, No. 5:09-CV-123-BG, 2010 WL 3025525, at *3 (N.D. Tex. June 30, 2010) (citing *Ripley*, 61 F.3d at 557; *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ("In Ripley we held that an ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions.")  "[A]n ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams*, 355 F. App'x at 832 n.6.

medical evidence supporting the ALJ's RFC determination.[10]   Consequently, substantial evidence does not support the ALJ's RFC determination, and remand is required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  See 28 U.S.C. § 636(b)(1).  Failure to file, by the date stated above, a specific written objection to a

---

[10] *See Williams v. Astrue*, 355 F. App'x 828, 831-32 (5th Cir. 2009) (reversing and remanding where the ALJ rejected the opinions of the claimant's treating physicians and relied on his own medical opinions as to the limitations presented by the claimant's impairments in determining RFC); *Medendorp v. Colvin*, No. 4:12-CV-687-Y, 2014 WL 308095, at *5-6 (N.D. Tex. Jan. 28, 2014); *Rodriguez v. Colvin*, No. 4:12-CV-825-Y, 2013 WL 6704882, at *4-7 (N.D. Tex. Dec. 19, 2013) ("Because the ALJ rejected all medical opinions in the record that might explain the effects of [the claimant's] impairments on her ability to perform work, there is no evidence supporting the ALJ's RFC determination); *LaGrone v. Colvin*, No. 4:12-CV-792-Y, 2013 WL 6157164, at *5-6 (N.D. Tex. Nov. 22, 2013); *Nesbitt v. Colvin*, No. 3:12-CV-98-BN, 2013 WL 5299261, at *5 (N.D. Tex. Sept. 20, 2013) ("While the ALJ may choose to reject [a doctor's] opinions, she cannot then independently decide the effects of Plaintiff's mental impairments on her ability to perform work-related activities, as that is prohibited by *Ripley*."); *Shugart*, 2013 WL 991252, at *5-6; *Harris v. Astrue*, No. 11-2738, 2012 WL 3150049, at *11 (E.D. La. July 12, 2012); *Newsome v. Barnhart*, No. 3:03-CV-3030-D, 2004 WL 3312833, at *4 (N.D. Tex. Oct. 8, 2004) ("Similarly, although the instant record contains some substantial evidence that [the claimant] suffers from 'mild' fibromyalgia that has improved with medication, the record lacks substantial evidence to support the ALJ's findings concerning *the effect* of this condition on her work-related abilities, i.e., that she can perform light work.").  *Cf. Carter v. Colvin*, No. 3:12-CV-01896-BF, 2013 WL 3328691, at *10-11 (N.D. Tex. July 2, 2013) (finding that ALJ did not violate the standards set forth in *Ripley* because the ALJ considered roughly 523 pages of medical evidence in formulating the RFC determination, including an *RFC assessment* performed by a doctor in a consultative examination).

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute* 28 U.S.C. § 636(b)(1) (extending the deadline to file objections from ten to 14 days).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **August 21, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is **RETURNED** to the docket of the United States District Judge.

SIGNED August 7, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

19